UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TERRY CLARK | : | CIVIL ACTION NO. 18-cv-231 |
| VERSUS | : | |
| CERTAINTEED SALARIED PENSION PLAN, ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment filed by defendants CertainTeed Salaried Pension Plan and St. Gobain Corporation Benefits Committee. Doc. 32. The motion is opposed by plaintiff Terry Clark. Docs. 41, 47.

For the following reasons, the defendants' motion will be **GRANTED**.

### I.
#### FACTS AND PROCEDURAL HISTORY

This matter arises from a suit filed [doc. 1] by plaintiff, Terry Clark, following the denial of his claims for retirement benefits under the CertainTeed Salaried Pension Plan (hereafter "CertainTeed Plan") by the Saint-Gobain Benefits Committee (hereafter "the Benefits Committee"). Doc. 20, pp. 1-8. Plaintiff contends that he has been a participant of the CertainTeed Plan for approximately eighteen (18) years. Doc. 1, p. 2. He indicates that throughout his employment with CertainTeed Corporation,[1] his pay check stubs reflected a "1-A Code," which

---

[1] On March 21, 1989, plaintiff began working for GS Roofing Products Company, Inc. ("GS Roofing") in Peachtree City Georgia. *Id.* at 167. On June 9, 1999, GS Roofing was acquired by Bird Corporation, a company in Saint-Gobain's controlled group. *Id.* at 23. On September 15, 2007, plaintiff transferred from his job at GS Roofing to the Birmingham, Alabama facility of CertainTeed Corporation, another company within Saint-Gobain's controlled group. *Id.* Then on November 1, 2009, plaintiff transferred to CertainTeed's Lake Charles, Louisiana Facility. *Id.*

he alleges confirm his participation in the CertainTeed Plan. *Id.* Furthermore, in June and December of 2015, plaintiff received pension estimate packets from Saint-Gobain's Pension Administrative Team providing estimates of his retirement benefits under the CertainTeed Plan. Doc. 27; Doc. 27, att. 1.

On April 19, 2017, plaintiff was notified that pension packets he received in June and December of 2015 were sent in error and that he was not a part of the CertainTeed Plan. Doc. 27, att. 3. On June 13, 2017, plaintiff submitted a claim[2] for benefits under the CertainTeed Plan to the Benefits Committee. Doc. 20, p. 2. On June 13, 2017, the Benefits Committee determined that plaintiff was not entitled to benefits under the CertainTeed Plan. *Id.* at 6. It indicated that plaintiff was a participant of another defined benefit plan, namely the Saint-Gobain Corporation Retirement Accumulation Plan ("RAP,") and reasoned that, under the terms of the CertainTeed Plan, he was never a participant. *Id.* at 5. The Benefits Committee further noted that plaintiff had never contributed to either the CertainTeed Plan or the RAP and indicated the "1A code" on his pay stub "is an actuarial code reflecting the location at which Mr. Clark is employed and is not, by itself, an indication of the defined benefit plan in which Mr. Clark participates." *Id.* at 7. On September 21, 2017, plaintiff appealed the Benefits Committee's determination. Doc. 1, p. 9. On January 18, 2018, the Benefits Committee affirmed its denial of plaintiff's claims asserting he did not meet the definition of "Employee" under the CertainTeed Plan. Doc. 20, pp. 164-66.

On February 23, 2018, Plaintiff filed the instant suit naming the Benefits Committee and CertainTeed Corporation as defendants. Doc. 1. He asserts under the terms of the CertainTeed Plan he "is clearly defined as a participant." *Id.* at 7. He claims he is entitled to recovery of

---

[2] On June 13, 2017, plaintiff's attorney sent a letter to the Benefits Committee and CertainTeed, Corporation. Doc. 20, p. 2. This letter purported to appeal the "denial of retirement benefits and vesting to Mr. Terry M. Clark." *Id.* at 2. On July 26, 2017, the Benefit Committee responded that since plaintiff's benefits had never been "formally rejected," they were treating the June 13, 2017 letter as "Mr. Clark's initial claim for benefits." *Id.* at 3.

retirement benefits, extracontractual damages, and statutory penalties. *Id.* at 8-11. On October 3, 2018, we issued our determination that the instant suit was correctly governed by ERISA (hereafter "ERISA Order"). Doc. 19, p. 1. In the ERISA Order, we ordered defendants to compile and file all portions of the administrative record relevant to the issues presented in plaintiff's complaint. *Id.* After the record was complete, we ordered plaintiff to submit a memorandum setting forth the reasons for reversing the plan administrator's decision. *See Id.* at 2.

The administrative record was filed by defendants [doc. 20] and it was supplemented by plaintiff [doc. 27]. On July 12, 2019, plaintiff filed his memorandum pursuant to our ERISA Order. Doc. 28 ("Memorandum in Support Pursuant to ERISA Case Order"). Defendants have filed a Motion for Summary Judgment in response. Doc. 32. Plaintiff opposes summary judgment. Docs. 41, 47. Because plaintiff's memorandum pursuant to our ERISA Order [doc. 28] and defendants' Motion for Summary Judgment encompass the same issues we have considered them concomitantly.

## II.
### LAW AND ANALYSIS

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is genuine "only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). When considering a motion for summary judgment, the court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift,* 210 F.3d 268, 270 (5th Cir. 2000). The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary

judgment if the movant fails to meet this burden. *Id.* If the movant makes this showing, however, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir. 1990). "If the record as a whole could not lead a rational trier of fact to find for the nonmovant, then there is no genuine issue for trial." *Vera v. Tue*, 73 F.3d 604, 608 (5th Cir. 1996) (citations omitted).

### A. Claims for Benefits Improperly Denied

We first consider plaintiff's claim for benefits under ERISA. Plaintiff claims he is entitled to retirement benefits under the CertainTeed Plan because defendants improperly denied his claim under the terms of the plan. Doc. 1, p. 9.

"Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a), provides a wide array of measures to employee-benefit plan participants and beneficiaries by which they may enforce their rights under ERISA and under the terms of their plans." *Massachusetts Mut. Life Ins. Co. v. Russell*, 105 S.Ct. 3085, 149 (1985) (Brennan, J., concurring). Pursuant to this section, a plaintiff may file a civil action "to recover benefits due to him under the terms of his plan." § 502(a)(1)(B). Alternatively, an ERISA beneficiary may recover benefits under an equitable estoppel theory. *See, e.g.*, *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d. Cir. 1994).

Plaintiff maintains that he has been a participant of the CertainTeed Plan for approximately eighteen (18) years. Doc. 1, p. 2. He argues "[u]nder a fair reading of the CertainTeed Salaried Pension Plan, Mr. Clark is a participant." *Id.* at 3. The Benefits Committee rejected this claim. Doc. 20, pp. 3-9, 164-66.

   **1. Standard of Review**

The parties argue which standard of review is applicable to our review of the Benefit Committee's determination. Defendants argue that this claim should be reviewed under the abuse of discretion standard. Doc. 32, att. 1, p. 10. Plaintiff asserts the court should conduct a *de novo* review. Doc. 41, p. 6. Established principles dictate "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 109 S.Ct. 948, 956 (1989). If the benefit plan grants the administrator discretionary authority, it must do so in express and unambiguous language; discretionary authority may not be implied. *See Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 559 (5th Cir. 1990) (citing *Moon v. American Home Assur. Co.*, 888 F.2d 86, 88 (11th Cir. 1989) (emphasis in original).

The plan administrator in this case was the Benefits Committee. Doc. 20, p. 164. Under the explicit terms of the CertainTeed Plan [doc. 20, pp. 53-123] the Benefits Committee only has "the authority to manage the administration of this Plan," [*id.* at 57] subjecting the Benefit Committee's determination to *de novo* review. However, defendants argue the CertainTeed Plan is an appendix to a larger plan called "The Saint-Gobain Retirement Plan," (hereafter "SGR Plan") which grants the Benefits Committee discretionary authority. Doc. 32, att. 1, p. 10. Defendants attach a copy of the SGR Plan to their instant motion. Doc. 34, att. 4.

Under the terms of the SGR Plan, the Benefits Committee has the authority "[t]o construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder." *Id.* at 30. Although we agree that this language grants the Benefits Committee discretionary authority, the SGR Plan is not specifically incorporated in the CertainTeed Plan. The Benefits Committee made reference [doc. 20, p. 7] to the SGR Plan when they initially denied plaintiff's claim. However, according to the CertainTeed Plan,

> This Plan document shall describe the terms of the Saint-Gobain Retirement Income Plan as it applies to Employees (as defined herein). The terms of the [SGR Plan] as it applies to other employees are covered in other plan documents.

*Id.* at 58. Clearly, "other plan documents" do not apply to the CertainTeed Plan. Moreover, at the outset of this case defendants were ordered "to compile all portions of the administrative record that the defendant maintains are relevant to the issues presented in plaintiff's complaint. This file should contain the Employee Benefit Plan." Doc. 19, p. 1. The SGR Plan documents attached to defendants' instant motion were not included in the administrative record. Doc. 20, 27. Therefore, as the relevant ERISA instrument in this case—the CertainTeed Plan—did not expressly grant defendants "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," [*Bruch,* 109 S.Ct. at 956] and we will conduct a *de novo* review the Benefits Committee's determination.

### 2. Eligibility Under the CertainTeed Plan

"*De novo* review requires that the court apply the same standard as the plan administrator in deciding whether the benefits were owed under the plan's terms." *Ariana M. v. Humana Health Plan of Texas, Inc.*, 2018 WL 4384162 (S.D. Tex. 2018) (citations omitted). The court's task "is to determine whether the administrator made a correct decision. The administrator's decision is accorded no deference or presumption of correctness." *Hoover v. Provident Life and Acc. Ins.*

*Co.*, 290 F.3d 801, 809 (6th Cir. 2002) (quotations and citations omitted). "To prevail, a claimant's entitlement to benefits must be supported by a preponderance of the evidence based on the court's review of the record." *Dewsnup v. Unum Life Ins. Co. of America*, 2018 WL 6478886 (D. Utah 2018) (citing *Niles v. Am. Airlines, Inc.*, 269 Fed.Appx. 827, 832 (10th Cir. 2008)).

Throughout these proceedings defendants have maintained that plaintiff's claim for benefits was denied because he did not meet the eligibility requirements under the explicit terms of the CertainTeed Plan. *See, e.g.,* Doc. 20, p. 4; Doc. 32, att. 1, p. 11. Under Section 3.1(a) of the CertainTeed Plan an employee "shall become an Active Participant as of the date on which he completes an eligibility computation period during which he has been credited with at least 1,000 Hours of Service . . ." Doc. 20, p. 70. However, Section 3.1(b) provides additional eligibility criteria and governs any "individual who becomes an Employee on or after January 1, 2001." *Id.*

Plaintiff argues that we do not need to consider the limitations set forth in Section 3.1(b) because he was an "employee" prior to 2001. Doc. 41, p. 13. We disagree. As set forth in the CertainTeed Plan:

> (1) "<u>Employee</u> means . . . any individual who is (1) receiving Compensation on a salaried basis for personal services rendered to **the Company**. . ." *Id.* at 64 (emphasis added).
>
> (2) <u>Company</u> means CertainTeed Corporation, a Delaware corporation, and any Affiliate of CertainTeed Corporation that adopts this Plan with the consent of the Board of Directors." *Id.* at 61.

Plaintiff was employed by GS Roofing Products Company, Inc. ("GS Roofing") until 2007 when he was transferred to the Birmingham, Alabama facility of CertainTeed Corporation. Doc. 20, p. 23. Prior to this transfer, GS Roofing was acquired by Bird Corporation, a company in Saint-Gobain's controlled group. *Id.* at 23. Although defendants concede "GS Roofing became an affiliate of CertainTeed Corporation as a result of the 1999 acquisition," [doc. 20, p. 4] no party

argues that GS Roofing or Bird Corporation ever "adopt[ed] the CertainTeed Plan with the consent of the Board of Directors." Doc. 20, p. 61. Rather, plaintiff attempts to argue that as the result of the June 9, 1999 acquisition, he became an "employee" of CertainTeed Corporation prior to January 1, 2001. Doc. 41, p. 13.

We do not find this to be a reasonable inference. Although plaintiff points out [doc. 47, p. 1] that Saint-Gobain's internal records indicate that employees of GS Roofing are in the CertainTeed "Business Unit," [doc. 20, p. 168] these records list GS Roofing as separate corporation[3] and defendants represent that "GS Roofing was maintained as a separate company within the Saint-Gobain Corporation controlled group." Doc. 44, p. 2. As contemplated by the CertainTeed Plan, GS Roofing was an "Affiliate of CertainTeed Corporation," [doc. 20, p. 61] and plaintiff did not meet the definition of "Employee" before January 1, 2001.

As plaintiff *was* unquestionably an employee of CertainTeed Corporation in 2007, when he was transferred to the Birmingham, Alabama facility of CertainTeed [doc. 20, p. 23], we next consider plaintiff's arguments that he is eligible for benefits under the CertainTeed Plan under Section 3.1(b). This provision states in part,

> Notwithstanding the provisions of Section 3.1(a), an individual **who becomes an Employee on or after January 1, 2001** shall not be eligible to become a Participant, unless:
>
> (1)(A) **he was a Participant prior to January 1, 2001** (and was not thereafter covered by another portion of the Saint-Gobain Retirement Income Plan or a defined benefit plan maintained by the Company or an Affiliate); (B) on January 1, 2001, he was not an employee of the Company or an Affiliate . . ."

---

[3] In the CertainTeed Plan "<u>Affiliate</u> means any employer which is included as a member with the Company in a controlled group of corporations, within the meaning of section 414(b) of the Code; which is a trade or business (whether or not incorporated) included within the Company in a parent-subsidiary, brother-sister or combined group of trades or business under common control . . ." Doc. 20, p. 60.

Doc. 20, p. 70 (emphasis added). Plaintiff argues if he became an employee of CertainTeed Corporation after January 1, 2001, then he meets the eligibility requirements for the CertainTeed Plan under Section 3.1(b) either because Section 3.1(b) is ambiguous, or, because plaintiff was *participating* in the CertainTeed Plan prior to January 1, 2001. Doc. 41, p. 14.

Plaintiff argues as under the terms of the CertainTeed Plan it is "impossible" for an individual to be a "Participant" prior to January 1, 2001 if he became an "Employee," on or after January 1, 2001. *Id.* We disagree. The relevant provisions of the CertainTeed Plan instruct:

> (1) "<u>Participant</u> means an Active Participant; a Former Active Participant; or a Terminated Participant." Doc. 20, p. 68.
>
> (2) "<u>Active Participant</u> means an individual who has become an Active Participant pursuant to Article III[4] and is an Employee on the date of reference." *Id.* at 60.
>
> (3) "<u>Former Active Participant</u> means a former Active Participant who, as of the date of reference, is employed by the Company or an Affiliate in a class of employee not covered by the Plan and for whom a benefit remains payable from the Plan." *Id.* at 66.
>
> (4) "<u>Terminated Participant</u> means any person who was an Active Participant in the Plan whose employment has Terminated, and for whom a benefit remains payable from the Plan." *Id.* at 69.

Reviewing these provisions, we would agree that in order to participate in the CertainTeed Plan an individual would have to had to have been employed by CertainTeed Corporation, or an Affiliate who adopted the plan, *at some time* prior to January 1, 2001. However as both Former Active Participants and Terminated Participants are included in the CertainTeed Plan's definition of Participant, and the last paragraph of 3.1(b) makes clear that this section applies to "[a]ny individual who becomes eligible to *recommence* participation in the Plan . . ." [*id.* at 70 (emphasis

---

[4]Under Section 3.3 "Each Employee who has satisfied the requirements of Section 3.1 shall become an Active Participant on the Entry Date." Doc. 20, p. 70. As outlined in Section 3.1, an Employee "shall become an Active Participant as of the date on which he completes an eligibility computation period during which he has been credited with at least 1,000 Hours of Service . . ." *Id.*

added)] we do not find this qualification ambiguous. Moreover, as plaintiff was never an employee of CertainTeed Corporation prior to 2001, under the terms of the CertainTeed Plan, he was not a participant.

Accordingly, we affirm the Benefit Committee's denial of plaintiff's claim for benefits under the terms of the CertainTeed Plan.

**B. ERISA Estoppel**

Plaintiff has alternatively argued that defendants are liable under the doctrine of ERISA-estoppel due to years of uncontested participation by Mr. Clark in CertainTeed Salaried Pension Plan. Doc. 1, p. 10.

The Fifth Circuit "explicitly adopt[ed] ERISA-estoppel as a cognizable theory," in *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir. 2005). "To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Id.* at 444-45 (citing *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 513 (5th Cir. 2000). "Material misrepresentations can be made in informal documents . . ., [if there is] a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." *Id.* at 445 (internal citations and quotations omitted).

As defendants point out [doc. 32, att. 1, p. 26], *Mello* is analogous to our case. On September 17, 1984, the *Mello* plaintiff began working for Bil Mar Food. 431 F.3d at 442. In 1987, Bil Mar Food was acquired by Sara Lee. *Id.* Bil Mar Food maintained its own retirement plan, however in 1994, plaintiff transferred to Bryan Foods, a division of Sara Lee that utilized the "Sara Lee Pension Plan." *Id.* According to plaintiff, "a Sara Lee vice-president, encouraged him to transfer and repeatedly assured him that his credited service date would remain September 17,

1984." *Id.* Between 1995 and 2000, plaintiff received six annual benefit statements that calculated his accrued benefits based on his 1984 Bil Mar Food hire-date. *Id.* However, he was later informed that his "credited service date was 1994 because Bil Mar Foods was not a participating employer in the Plan at the time of [plaintiff's transfer]." *Id.* at 443. Applying ERISA-estoppel, the district court in *Mello* originally found that,

> despite the benefit statements' disclaimer that they were "for illustrative purposes only" and "[t]he Plan documents will govern the determination of any benefits you are eligible to receive," "the substance and implications of the written misrepresentations are enough in and of themselves to warrant a finding of reasonable detrimental reliance on material misrepresentations."

*Id.* at 446 (citations omitted). On review, the Fifth Circuit agreed a material misrepresentation had occurred [*id.* at 445 (citing *Curio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d. Cir. 1994))] however, the court did not find plaintiff's reliance on the misrepresentations to be reasonable in light of the unambiguous terms in the Sara Lee Pension Plan. *Id.* at 447 ("Mello's claim cannot surmount the clear and consistent case law forbidding recognizing reasonable reliance on informal documents in the face of unambiguous Plan terms.")

In the case before us, plaintiff argues that a material misrepresentation occurred either because throughout his employment with CertainTeed his check stubs reflected an "1-A Code" or because he received two "vesting statements" in 2015 which calculated his benefits under the CertainTeed Plan rather than the RAP Plan. *See* Doc. 1, p. 10; *See also* Doc. 28, p. 27. Both vesting statements stated "***[the packets were] only an estimate an is not a guarantee of benefits.***" Doc. 27, p. 2; Doc. 27, att. 1, p. 2 (emphasis in originals). On April 19, 2017, plaintiff was informed that "a coding error occurred which mistakenly placed [him] in the incorrect plan." Doc. 27, att. 2, p. 1. Although we would not agree that the "1-A Code," constituted a material

misrepresentation,[5] we would agree that the statements plaintiff received in 2015 could mislead a reasonable employee in making an adequately informed decision. Nevertheless, plaintiff has not demonstrated that he relied on these statements to his detriment and even if he had, such reliance would be unreasonable based on the unambiguous terms of the CertainTeed Plan discussed *supra*.

Accordingly, plaintiff is not entitled to CertainTeed Plan under the theory of ERISA-estoppel.

**C. Extracontractual Damages**

Plaintiff also claims he is entitled to extracontractual damages because defendants violated a fiduciary duty him by providing him inaccurate information related to his benefits or because they did review his claim in a timely manner. Doc. 1, pp. 10-11.

The relevant ERISA statutory provision governing the time in which an ERISA determination should be made [29 CFR § 2560.503-1(h)(1)(i)] does not give rise to a private right of action for compensatory or putative relief occasioned by a delay in issuing a determination.[6] *See Massachusetts Mut. Life Ins. Co. v. Russell*, 105 S.Ct. 3085, 3091 (1985). Moreover, although Section 409(a) establishes liability for an ERISA fiduciary's breach of duty [29 U.S.C. § 1109(a)] and 502(a)(2) provides that a participant or beneficiary may file a civil action "for appropriate relief under section 409," as noted by the Supreme Court, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of

---

[5] In a deposition, Janet Rosowicz [doc. 32, att. 5], the manager of Saint-Gobain's North American Defined Benefit Administration [*id.* at 4] represented that "[t]he 1A code on Mr. Clark's paystub is the actuarial code reflecting the location at which Mr. Clark is employed, and is not by itself an indication of the defined benefit plan in which Mr. Clark participates." *Id.* at 11.

[6] 29 CFR § 2560.503-1(h)(1)(i) provides that an ERISA determination should be made by an administrator, "promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review. . ." If a determination is not issued, there is not claim for damages, however a claimant may consider his claim denied and bring a civil action to appeal this denial. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 105 S.Ct. 3085, 3091 (1985) (citing 29 CFR § 2560.503-1(h)(4)).

plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 3090.

Accordingly, even if defendants breached a fiduciary duty or failed to timely issue a determination on plaintiff's claim, these acts do not provide plaintiff with a claim for damages.

**D. Statutory Damages**

Finally, we consider plaintiff's claim for delay penalties pursuant to 29 U.S.C. § 1132(c)(1)(B). Doc. 1, pp. 10-11.

ERISA contains a disclosure provision that requires a plan administrator to, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or *other instruments under which the plan is established or operated.*" 29 U.S.C. § 1024(b)(4) (emphasis added). A "participant" for purposes of 29 U.S.C. §1024(b)(4), is anyone with a "colorable" claim to vested benefits. *Bruch*, 109 S.Ct. at 118. Section 1132(c)(1)(B) renders a noncompliant administrator liable for up to $110 per day for failing to produce requested plan documents within 30 days of the request." 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c–1 (increasing the per diem penalty from $100 to $110). The phrase "other instruments under which the plan is established or operated" has been construed narrowly to apply only to formal documents that establish or govern the plan. *See e.g. Brown v. American Life Holdings, Inc.,* 190 F.3d 856, 861 (8th Cir.1999) (holding that phrase "other instruments under which the plan is established or operated" means instruments which govern the plan rather than those which simply evidence the plan's operation); *Ames v. American Nat. Can Co.,* 170 F.3d 751, 758 (7th Cir.1999) (rejecting interpretation of phrase "other instruments under which the plan is established or operated" as

applying to all documents that provide information about a plan and its benefits). As noted by one court,

> When determining whether a plan document falls within the disclosure provision, courts consider the purpose of this provision to ensure that the individual knows exactly where she stands with respect to the plan, which includes having the information necessary to determine her eligibility and understand her rights under the plan and to ascertain the procedures she must follow to obtain benefits.

*Hartman v. Dana Holdings Corp.*, 978 F.Supp.2d 957, 967 (N.D. Ind. 2013) (internal citations omitted).

On June 13, 2017, plaintiff sent the Benefits Committee a written request for "copies of the summary plan description and plan documents for the CertainTeed Salaried Pension Plan . . . as required pursuant to 29 U.S.C. § 1024." Doc. 20, p. 2. In response, plaintiff received portions of the CertainTeed Plan, the SGR Plan and the RAP Plan. Doc. 41, p. 21; *See* Doc. 27, att. 3. However, he did not receive a *complete copy* of the SGR Plan until July 26, 2017, forty-three (43) days after his June 13, 2017 request. Doc. 41, p. 21. Plaintiff reasons that because, as argued by defendants [doc. 32, att. 1, p. 10], the CertainTeed Plan is an appendix to the SGR Plan, he should have received a complete copy of the SGR plan within thirty days. Doc. 28, pp. 29-30. He claims he is entitled to statutory penalties for the thirteen-day delay. Doc. 1, p. 10; Doc. 41, p. 21. We disagree. Although plaintiff had a colorable claim to benefits under the CertainTeed Plan, as we discussed *supra*, the provisions of the SGR Plan do not govern the CertainTeed Plan. Accordingly, the SGR Plan was not necessary to plaintiff's eligibility determination.

### III.
#### CONCLUSION

Having reviewed all the claims, we found "no genuine dispute as to any material fact," defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. For the reasons

stated hereinabove, the motion for summary judgment filed by defendants CertainTeed Salaried Pension Plan and St. Gobain Corporation Benefits Committee [doc. 32] will be **GRANTED**.[7] Plaintiff is not entitled to retirement benefits under the CertainTeed Plan, or damages under ERISA. Accordingly, his claims will be **DISMISSED WITH PREJUDICE**.

THUS DONE AND SIGNED in Chambers this 15th day of January, 2020.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE

---

[7] Given our conclusion as to the merits plaintiff's request for attorney fees and interest [Doc. 1, p. 11] is also denied.